J-A11019-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JAMES BROOKS, | |
| Appellant | No. 588 EDA 2014 |

Appeal from the Judgment of Sentence of September 16, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0011224-2012

BEFORE:  FORD ELLIOTT, P.J.E., OLSON AND WECHT, JJ.

MEMORANDUM BY OLSON, J.:                         **FILED JUNE 05, 2015**

Appellant, James Brooks, appeals from the judgment of sentence entered on September 16, 2013, as made final by the denial of Appellant's post-sentence motion on January 16, 2014.  We affirm.

The trial court has ably explained the underlying facts of this case:

> On the evening of January 25, 2012, [Appellant and Appellant's co-defendant, Tyrone Jefferson (Jefferson)] walked together along Bridge Street in the direction of Torresdale Avenue[, in Philadelphia].  After the pair crossed Ditman Street, they passed a house [on] Bridge Street, where Quadir Bush (Bush) and [Bush's] cousins were celebrating a family member's birthday.  Bush's cousins, Mark Brown (Brown) and Darryl Wallace (Wallace), both described feeling uneasy as Jefferson and [Appellant] walked past.
>
> At the intersection of Bridge Street and Torresdale Avenue, four of [Appellant's] friends – Ali Ellis (Ellis), Zakeem Singleton (Singleton), Dhubair Muhamad (Muhamad), and Mysheer Pryor (Pryor) – stood, smoking cigarettes together

outside of a corner store. Jefferson and [Appellant] spoke to Ellis and Muhamad for two-and-a-half to five minutes. After that conversation, Jefferson and [Appellant] doubled-back [and walked] north on Bridge Street in the direction from which they had come. Jefferson and [Appellant] walked directly to Bush and his cousins, where [Appellant] asked if anyone had marijuana. In response, Bush and his cousins laughed; they told [Appellant] that they did not have any marijuana. [Appellant] pressed [and asked] for drugs a second time. The cousins once again answered in the negative, angering [Appellant]. Wallace [testified] that [Appellant] "went from 0 to 100." [Appellant] then said, "you all think I'm playing[?]" and told Jefferson to pass him a gun. Jefferson took a revolver from the waistband of his pants and handed it to [Appellant].

[Appellant] [] pointed the gun at the cousins, prompting Wallace and Brown to run for cover. As they ran toward the house, [Appellant] aimed the gun at Bush's head [and pulled] the trigger [from] less than two feet away. A single bullet penetrated Bush's head, killing him. Immediately thereafter, Jefferson and [Appellant] ran away together "down Torresdale towards Pratt."

. . .

On September 16, 2013, following a jury trial[, Appellant] was found guilty of [first degree murder, criminal conspiracy, and possessing instruments of crime[1]]. That same day, [the trial court] sentenced [Appellant] to the mandatory term of life imprisonment for murder of the first degree. On September 20, 2013, [Appellant] filed [a] post-sentence motion[], which [the trial court] denied on January 16, 2014.

Trial Court Opinion, 6/17/14, at 1-3 (internal footnotes and citations omitted

and some internal corrections omitted).

---

[1] 18 Pa.C.S.A. §§ 2502(a), 903(a), and 907(a), respectively.

Appellant filed a timely notice of appeal; Appellant now raises one claim to this Court:

> Did the trial court commit an abuse of discretion when it overruled objections to comments made by the prosecutor during his closing speech wherein he gave his personal opinion regarding testimony given by Ali Ellis, [a/k/a] Hawk and told the jury that the defense had a duty to interview and take statements from witnesses even though the police had not done so?

Appellant's Brief at 3.

We have reviewed the briefs of the parties, the relevant law, the certified record, and the thorough and well-written opinion of the able trial judge, the Honorable Teresa Sarmina. We conclude that the claim raised in Appellant's brief is meritless and that the trial court's opinion, filed on June 17, 2014, meticulously and accurately explains why Appellant's claim fails. Therefore, we adopt the trial court's opinion as our own. In any future filings with this or any other court addressing this ruling, the filing party shall attach a copy of the trial court's opinion.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/5/2015

- 3 -

PHILADELPHIA COURT OF COMMON PLEAS
CRIMINAL TRIAL DIVISION

COMMONWEALTH                              :

                                         CP-51-CR-0011224-2012

                         :

       v.                                   Superior Court Docket No.
                         :        588 EDA 2014

JAMES BROOKS                              :

Sarmina, J.                               :
June 17, 2014
                   OPINION

PROCEDURAL HISTORY

FILED

JUN 17 2014

Criminal Appeals Unit
First Judicial District of PA

On September 16, 2013, following a jury trial[1] before this Court, James Brooks (the

defendant) was found guilty of murder of the first degree (H-1), criminal conspiracy (F-1), and

possessing instruments of crime (PIC) (M-1).[2] That same date, this Court sentenced the defendant

to the mandatory term[3] of life imprisonment for murder of the first degree.[4] On September 20,

2013, the defendant filed post-sentence motions, which this Court denied on January 16, 2014. On

February 12, 2014, the defendant filed this timely appeal.

---

[1] The defendant was tried alongside Tyrone Jefferson (Jefferson), CP-51-CR-0008441-2012, Superior Court Docket No. 776 EDA 2014. Jefferson was convicted of murder of the third degree (F-1), criminal conspiracy (F-1), and possessing instruments of crime (PIC) (M-1). Notes of Testimony (N.T.) 9/16/13 at 59.

[2] 18 Pa.C.S. §§ 2502(a), 903(a), and 907(a), respectively.

[3] 18 Pa.C.S. § 1102(a)(1).

[4] As to the conviction for criminal conspiracy, this Court sentenced the defendant to a concurrent term of not less than 20 years nor more than 40 years confinement. N.T. 9/16/13 at 71. As to the conviction for PIC, this Court sentenced the defendant to a concurrent term of not less than one year nor more than five years confinement. Id.

1

FACTS

On the evening of January 25, 2012, Jefferson and the defendant walked together along Bridge Street in the direction of Torresdale Avenue.[5] N.T. 9/10/13 at 83-84; N.T. 9/11/13 at 24. After the pair crossed Ditman Street, they passed a house at 2091 Bridge Street, where Quadir Bush (Bush) and his cousins were celebrating a family member's birthday. N.T. 9/10/13 at 84; N.T. 9/11/13 at 24; N.T. 9/13/13 at 186. Bush's cousins, Mark Brown (Brown) and Darryl Wallace (Wallace), both described feeling uneasy as Jefferson and the defendant walked past. N.T. 9/10/13 at 103-04; N.T. 9/11/13 at 23.

At the intersection of Bridge Street and Torresdale Avenue, four of the defendant's friends — Ali Ellis (Ellis), Zakeem Singleton (Singleton), Dhubair Muhamad (Muhamad), and Mysheer Pryor (Pryor)[6] — stood, smoking cigarettes together outside of a corner store.[7] N.T. 9/12/13 at 161-2, 244-45; N.T. 9/13/13 at 79-80, 88. Jefferson and the defendant spoke to Ellis and Muhamad for two-and-a-half to five minutes. N.T. 9/10/13 at 91; N.T. 9/12/13 at 166. After that conversation, Jefferson and the defendant doubled-back, walking north on Bridge Street in the direction from which they had come. Jefferson and the defendant walked directly to Bush and his cousins, where the defendant asked if anyone had marijuana. N.T. 9/11/13 at 24. In response, Bush and his cousins laughed; they told the defendant that they did not have any marijuana. The defendant pressed, asking for drugs a second time. The cousins once again answered in the negative, angering the defendant. Wallace stated that the defendant "went from 0 to 100." Id. at 59. The defendant

---

[5] Roughly fourteen months earlier, on the evening of November 20, 2012, Philadelphia Police Officer John Descher had encountered Jefferson and the defendant together, walking northbound on 5000 Torresdale Avenue, approximately two to five blocks away from the intersection of Bridge Street and Torresdale Avenue. N.T. 9/11/13 at 135-40, 142.

[6] Jefferson and the defendant had played basketball with these four individuals in the past at White Hall Park, five blocks away from Bridge Street and Torresdale Avenue. N.T. 9/12/13 at 114; N.T. 9/13/13 at 176, 184-85, 191-92.

[7] The corner store is located at the intersection of Bridge Street and Torresdale Avenue. Ellis, Singleton, Muhamad, and Pryor had been on the corner smoking cigarettes for about ten minutes before the defendant and Jefferson approached. N.T. 9/12/13 at 160-61. Ordinarily, these four friends did not spend an extended period of time in this area. Id. at 195; N.T. 9/13/13 at 76, 192.

then said, "[Y]ou all think I'm playing[?]" and told Jefferson to pass him a gun. Id. at 57. Jefferson took a revolver from the waistband of his pants and handed it to the defendant. Id.

The defendant then pointed the gun at the cousins, prompting Wallace and Brown to run for cover. N.T. 9/10/13 at 92; N.T. 9/11/13 at 24. As they ran toward the house, the defendant aimed the gun at Bush's head, pulling the trigger while less than two feet away. N.T. 9/10/13 at 68, 70; N.T. 9/11/13 at 24. A single bullet penetrated Bush's head, killing him. Immediately thereafter, Jefferson and the defendant ran away together "down Torresdale towards Pratt[.]" N.T. 9/13/13 at 23.

## LEGAL DISCUSSION

On appeal, the defendant raised a single issue with two components.

The defendant claims that this Court committed an abuse of discretion when it overruled defense counsel's objections on the grounds that the prosecutor committed prosecutorial misconduct, depriving the defendant of a fair and impartial trial. The defendant identifies two bases for his claim of prosecutorial misconduct: first, the prosecutor improperly shifted the burden to produce evidence to the defendant; second, the prosecutor improperly proffered a personal opinion. As the Due Process Clause was not violated by either of the prosecutor's purported errors, the defendant's claim fails.

Prosecutorial misconduct exists when there is a violation of a defendant's statutorily or constitutionally protected rights.[8] Commonwealth v. Cox, 983 A.2d 666, 685 (Pa. 2009); Commonwealth v. Rhone, 619 A.2d 1080, 1084 (Pa.Super. 1993). The Fourteenth Amendment of the United States Constitution establishes that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. While there is no "precise

---

[8] As the defendant has not alleged that the prosecutor's conduct violated a statutorily protected right, this Court will only address the defendant's claim of prosecutorial misconduct as being rooted in a violation of a constitutionally protected right.

3

definition" of due process, "the phrase expresses the requirement of 'fundamental fairness[.]'" Commonwealth v. Turner, 80 A.3d 754, 764 (Pa. 2013), *cert. denied sub nom.* Turner v. Pennsylvania, 134 S. Ct. 1771 (U.S. 2014), *citing* Lassiter v. Dep't of Soc. Serv. of Durham County, 452 U.S. 18 (1981). Procedural due process requires "the chance to defend oneself before a fair and impartial tribunal." Id. at 764, *citing* Commonwealth v. Wright, 961 A.2d 119, 132 (Pa. 2008); Commonwealth v. Thompson, 281 A.2d 856, 858 (Pa. 1971). When determining whether or not a defendant has been deprived a fair and impartial trial, a trial court must: (a) analyze whether misconduct actually occurred, and (b) assess the degree of resulting prejudice. Commonwealth v. Judy, 978 A.2d 1015, 1019 (Pa.Super. 2009).

### a. The prosecutor did not shift the burden to produce evidence such that the defendant was deprived of a fair and impartial trial.

In a criminal trial, a suggestion that a defendant has a duty or obligation to produce evidence may infringe upon the defendant's constitutionally-protected presumption of innocence in violation of his right to a fair trial. Commonwealth v. Miller, 208 A.2d 867, 869-71 (Pa. 1965); see also Commonwealth v. Wiggins, 328 A.2d 520, 521 (Pa.Super. 1974), *citing* Commonwealth v. Rose, 321 A.2d 880 (Pa. 1974) ("The Commonwealth bears a never shifting burden of proving each and every essential element of the crime charged and the defendant need not offer any defense whatsoever."). A defendant's constitutionally-protected right to be presumed innocent is violated by a statement from which the jury may draw an adverse inference from the defendant's failure to produce evidence. Miller, 208 A.2d at 870. However, not every comment about a defendant's failure to produce evidence infringes upon his presumption of innocence. A prosecutor's comment concerning a defendant's failure to produce evidence does not violate a defendant's right to a fair trial when the statements are in response to "defense counsel's argument" or a "theory espoused by the defense[.]" Commonwealth v. Sneed, 45 A.3d 1096, 1112 (Pa. 2012).

4

In Commonwealth v. DeJesus, our Supreme Court found that the prosecutor's comment about the defense's failure to produce evidence did not improperly shift the burden to produce evidence because the prosecutor's comment rebutted the theory offered during defense counsel's summation. 860 A.2d 102, 110-111 (Pa. 2004). During that summation, defense counsel questioned the truthfulness of Commonwealth witness Jennifer Zlatrick's trial testimony. Defense counsel argued that Ms. Zlatnik's testimony had been colored by information she received from Antonio Castillo during a visit in jail. Id. The prosecutor responded, "ask[ing] why the defense did not present the prison log as to who contacted Ms. Zlatnik at prison." Id. at 110 (internal citations omitted). The prosecutor then suggested that the defense had not presented the prison log because it would have demonstrated that Zlatnik had not been visited by Castillo. The DeJesus Court held that commenting on the absence of evidence to demonstrate the weakness of the defense's theory does not constitute burden-shifting. Id. at 110-11.

Similarly, our Supreme Court in Commonwealth v. Thomas found that the prosecutor did not improperly shift the burden to produce evidence by highlighting that the theory espoused by defense counsel during summation lacked evidentiary support. 54 A.3d 332, 340 (Pa. 2012), *cert. denied sub nom*. Thomas v. Pennsylvania 134 S. Ct. 173, 187 (U.S. 2013). The defense called Tamika McMurren, who testified that the defendant could not have committed the crime as he was unable to run and could not use his right hand. Id. In his closing argument, the prosecutor pointed out that the defense had not produced evidence to corroborate McMurren's claim about the defendant's disabilities. Our Supreme Court found that "suggesting possible weaknesses regarding the defense's proffered evidence[]" did not amount to an improper shift of the burden to produce evidence. Id.

In the case *sub judice*, as the prosecutor's comments were made in response to the allegations advanced in defense counsel's summation, the prosecutor did not improperly shift the burden of production, and the defendant was not deprived of a fair and impartial trial. In defense counsel's

5

closing argument, he attacked the Commonwealth's case, arguing that the prosecutor changed the theory of the case mid-trial in order to distract the jury from underlying weaknesses in its evidence:

> And through this examination today of certain witnesses, seems like he's going to stand up here in a moment and argue that this was some grand setup, that there were people, in his words, positioned, a 17-year-old kid [Pryor] positioned on the bar over here. Other people over here in front of the corner store.
>
> Well, if this is what he thinks -- and we're almost two years post murder in this case -- then why weren't any one of these individuals that he thinks were accomplices and set up this hit or directed this hit, why weren't one of these persons arrested?
>
> Why aren't those people sitting at this table if that's what he really thinks? And if that's what he really thinks, he's changed his theory of the case from when he first argued the case. Because when he first presented this case to you on Tuesday, in his opening, Mr. Lim said it was these two guys, not these six guys or four guys or three guys.
>
> Ladies and gentlemen, one of the things that Mr. Lim made a big deal about today was he was attempting to argue with a witness about what the reaction -- he was comparing the reaction of the people outside the bar with the people on this corner here (indicating). We all know, when you see something startling, you look at it. You stop and take your eyes off it. That's what those people at the bar did.
>
> You don't see those people at the bar -- despite what he says, it's what the tape shows, not what we say. We don't get to tell you what the evidence is. The evidence is what it is. And the evidence in this case, if you watch the video, those people don't run into that bar until right around the time two people run by them.
>
> That's when they run in the bar, and you also see that 17-year-old kid, Mr. Pryor, standing there on the corner watching everything.
>
> You have the awesome responsibility of not only sifting through this evidence, but making sense of it, which is absolutely impossible; and if it's impossible for you to sift through this evidence to the extent that you must in order to decide this case, the only appropriate verdict here is not guilty.

N.T. 9/13/13 at 237-40.

The prosecutor responded to the accusation that his theory of the case changed mid-trial. He admitted that new information was revealed during trial, but he disputed that the change was indicative of weaknesses in the Commonwealth's case. The prosecutor agreed that the Commonwealth's theory changed slightly during the course of trial because neither party had

obtained pre-trial statements[9] from certain witnesses, not because the Commonwealth's case was weak:

> When people don't give statements, they're not committed to anything. They can walk into this courtroom, take the seat and say whatever it is they want to say; and that's what happened and when I won't get statements -- see, by rules, I got to give all these documents in that box. I got to turn them all over to the attorneys before we start, so they can read, review and critically analyze my witnesses before we get started.

> But I didn't get to do that because I didn't have enough statements, I'm learning like you're learning, as these defense witnesses testified and as I'm learning like [sic] listening.

N.T. 9/13/13 at 314.

The prosecution then explained how his theory evolved as he heard the witnesses' testimony at trial:

> The motive, the reason, the why came together and was supported by their own witnesses. But now, you want me to believe that they were there, that images are burned and they want to clear their conscience and that's not them? So they know them and let them sit till trial without a statement, without anything? They had conversations with each other and they don't mention it to each other?

N.T. 9/13/13 at 320.

The prosecutor's explanation that his case changed because of the absence of pre-trial statements did not shift the burden to produce evidence to the defense, but instead rebutted the defense's allegation that the prosecutor's theory of the case changed mid-trial because it was weak.

Had the prosecutor, in fact, improperly suggested that the defense had the burden to produce evidence, the trial court would then evaluate the prejudice exacted by the statement to determine if it denied the defendant a fair and impartial trial. Commonwealth v. Johnson, 719 A.2d 778, 787 (Pa.Super. 1998); see also Commonwealth v. Chmiel 889 A.2d 501, 542 (Pa. 2005) ("[P]rosecutorial misconduct does not occur unless the unavoidable effect of the comments at issue was to prejudice the jurors by forming in their minds a fixed bias and hostility toward the defendant, thus impeding their ability to weigh the evidence objectively and render a true verdict.").

---

[9] The prosecutor did not place the onus for the absence of pre-trial statements on the defense.

7

In making this determination, the court's instructions may counterbalance the comments at issue.[10] As jurors are presumed to follow a trial court's instructions, an appropriate instruction will eradicate prejudice as long as it corrects the potentially improper statement. Commonwealth v. Szakal, 50 A.3d 210, 222 (Pa.Super. 2012).

In the case *sub judice*, defense counsel objected to the aforementioned statements of the prosecutor and moved for a mistrial on the ground that the prosecutor improperly shifted the burden of production to the defense. This Court overruled the objection and denied the motion for a mistrial. N.T. 9/13/13 at 320, 324. In its final charge, this Court provided the following instruction to the jury:

> A fundamental principle of our system of criminal law is that a defendant is presumed innocent. The mere fact that someone is arrested and is charged with crimes is not evidence of guilt. Furthermore, the presumption of innocence that I was just telling you about stays with a defendant throughout the entire trial and unless and until you, the jury, conclude based upon a careful and impartial consideration of the evidence that the Commonwealth has proven each guilty beyond reasonable doubt of the charges made against him.
>
> **It is not a defendant's burden to prove anything in his own defense.** Instead, it is the Commonwealth that always has the burden of proving each and every element of the crimes charged and that each defendant is guilty of those crimes beyond a reasonable doubt. And I will give you those elements toward the end of this charge.
>
> If the evidence presented fails to meet the Commonwealth's burden, then your verdict must be not guilty. On the other hand, if the evidence does prove beyond reasonable doubt that the defendants are guilty of the crimes charged, then your verdict should be guilty.

N.T. 9/16/13 at 11-12. (emphasis added).

This Court then summarized:

> So to summarize, you may not find the defendants guilty based upon a mere suspicion of guilt. The Commonwealth has the burden of proving each defendant guilty beyond reasonable doubt. If the Commonwealth has met that burden, then the defendants are no longer presumed innocent and you should find them guilty.

---

[10] Although an immediate instruction is preferable, a trial court may wait to address an issue until its charge at the conclusion of a case. Commonwealth v. Rough, 418 A.2d 605, 611 (Pa.Super. 1980) (noting that a curative instruction "need not be given immediately following the erroneous admission, but may occur later in the charge.").

8

On the other hand, if the Commonwealth has not met its burden, then you must find them not guilty.

Id. at 13.

This Court's instructions made it clear that the burden to produce evidence—and to prove guilt beyond a reasonable doubt—rested with the Commonwealth, not the defendant. It is presumed that the jury followed this Court's instruction to analyze whether the Commonwealth proved each and every element of the crimes charged beyond a reasonable doubt. Thus, this Court's instruction properly addressed any possible prejudice flowing from the prosecutor's statement.

b. **The defendant was not deprived of a fair and impartial trial when the prosecutor offered his personal opinion, as this Court provided a limiting instruction which cured any prejudice.**

The defendant claims that the prosecutor offered an improper personal opinion during closing arguments which violated his due process right to a fair trial. The defendant specifically points to the portion of the prosecutor's closing where he stated, "[M]y 'God" and "I can't believe" when recounting how the evidence elicited at trial impacted his understanding of the events on January 25, 2012. As this Court sustained counsel's objection and provided the jury with an instruction to base its determination on the evidence presented at trial—not on the prosecutor's impressions—the defendant was not deprived of a fair and impartial trial.

As discussed *supra*, when a prosecutor makes an improper statement, the Due Process Clause is not automatically violated. A defendant is deprived of a fair trial only where that statement creates a fixed bias in the minds of the jury. Johnson, 719 A.2d at 787; Chmiel, 889 A.2d at 542.

In Commonwealth v. Jones, our Supreme Court held that an improper statement proffered by a prosecutor during closing arguments did not violate the defendant's due process rights because the trial court's instruction thereafter cured the prejudice at issue. The prosecutor had made an improper statement, asking the jury to sentence the defendant to death based on how society would perceive their decision, not on the evidence presented at trial and/or the penalty phase hearing.

9

Defense counsel immediately objected. 683 A.2d 1181, 1201 (Pa. 1996). The trial court sustained the objection and instructed the jury "not to be concerned by how other people would react[,]" and instead to base its decision on the facts presented. Id. at 1201 n.11.

Our Supreme Court determined that the prosecutor's comments were improper, but the defendant's right to a fair trial was not violated because "the cautionary instructions given by the court adequately cured any possible prejudice." Id. at 1201.

Here, defense counsel timely objected when the prosecutor stated, "[M]y God" and "I can't believe" during his summation, and moved for a mistrial on the ground that the prosecutor improperly asserted his personal opinion in his closing argument. This Court sustained counsel's objection but denied the motion for a mistrial:

> And I'm challenging you, see me getting mad at him. I'm like, you ain't there, stop it, tell me this, tell me that. He's kind of, in all honesty, beating me up.
>
> He's like, no, I was there, this is what I saw and I was there, my God, I set them up, I'm like sweating, what's going on here? Until Mysheer Pryor came out of the wall and sat in the same chair; and again I'm fighting him, you're not there, you're not there, you're not there, because I kept thinking he was pointing up here (indicating) like, he was up here, Mysheer Pryor being the second guy and I'm like, why? Why is this guy not budging?
>
> I'm about to cry inside and sit down and then Mr. Pagano asks a question: Where are you? And Mysheer Pryor says: I'm standing right in front of this bar smoking a cigarette. And I'm like, my God, you're kidding me. And like a bell goes off. You can ask my detectives, I went outside yesterday –
>
> MR. STRETTON: Objection.
>
> MR. PAGANO: Objection.
>
> THE COURT: Stop with the conversation, Mr. Lim.
>
> MR. LIM: I'm like I can't believe day four and I realize this conspiracy is so much larger than the two people sitting at this table.
>
> MR. STRETTON: Objection.
>
> MR. PAGANO: Objection.
>
> MR. STRETTON: Move for mistrial.

10

THE COURT: Sustained. Denied.

N.T. 9/13/13 at 315-17.

During its final charge, this Court instructed the jury:

The speeches of counsel are not part of the evidence, and you should not consider them as such. In deciding the case, you should carefully consider the evidence in light of the various reasons and arguments which each lawyer presented to you. It is the right and duty of each lawyer to discuss the evidence in a manner which is most favorable to the side which he presents. You should be guided by each lawyers' arguments to the extent that they are supported by the evidence, and insofar as they aid you in applying your own reason and common sense.

Now, Mr. Lim shared with you his thought processes to some extent and to some extent his personal opinions. You are to disregard those. Do not think that because he is the prosecutor he has some special knowledge or insight that was not presented to you through evidence. That is not the case. And to the extent that anybody, including myself, stated any facts which differ from your recollection of the facts, then you are to go with your recollection and to disregard all of ours, including mine.

And as I have told you many times, you are the sole and only judges of the credibility and weight of all of the testimony in this case. And so you are not required to accept the arguments of any of the lawyers. It is for you and you alone to decide the case based on the evidence as it was presented to you from the witness stand and in accordance with the -- and that includes the stipulations that were entered into by and between counsel, and in accordance with the instructions which I have just been giving you.

N.T. 9/16/13 at 39-40. (emphasis added).

This Court's instruction eliminated any prejudice that would have denied the defendant a fair and impartial trial. As in Jones, this Court instructed the jury not to be influenced by the prosecutor's statements, thus mitigating any possible prejudice.

Accordingly, for all of the foregoing reasons, the judgments of sentence should be affirmed.

BY THE COURT:

M. TERESA SARMINA                    J.

11