[J-36-2018] [MO: Baer, J.]

**IN THE SUPREME COURT OF PENNSYLVANIA
MIDDLE DISTRICT**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 53 MAP 2017 |
| | : | |
| Appellee | : | Appeal from the Order of the Superior |
| | : | Court at No. 2359 EDA 2015 dated |
| | : | March 23, 2017 Affirming the |
| v. | : | Judgment of Sentence of the Court of |
| | : | Common Pleas Pike County, Criminal |
| | : | Division, at No. CP-52-CR-0000104- |
| MICHAEL NORTON, | : | 2013, dated August 7, 2015 |
| | : | |
| Appellant | : | ARGUED:  May 16, 2018 |

**DISSENTING OPINION**

**JUSTICE DONOHUE**                                    **DECIDED:  January 23, 2019**


In *Commonwealth v. Carrasquillo*, 115 A.3d 1284 (Pa. 2015), this Court held that

a defendant seeking to withdraw his guilty plea prior to sentencing, based on a claim of

innocence, must show that his claim of innocence is "at least plausible to demonstrate,

in and of itself, a fair and just reason" for withdrawal.  *Id*. at 1292.  To provide guidance

on this new standard, in the present case we granted allocatur to address:

> Whether a defendant's assertion of innocence based on the
> sufficiency of the evidence and his inability to reconcile
> entering a plea when he maintained his innocence well
> before sentencing and when the Commonwealth made no
> argument of prejudice, is sufficient to establish a fair and just
> reason for withdrawing his plea of nolo contendere?

*Commonwealth v. Norton*, 170 A.3d 1059 (Pa. 2017) (per curiam).

Although the Majority never squarely addresses the issue that we agreed to hear,

the Majority apparently has decided that it is not a fair and just reason to withdraw a

plea where the withdrawal is based on a factually supported argument that the Commonwealth does not have sufficient evidence to convict. The Majority seems to suggest that if the facts are discovered post-plea, a motion to withdraw may be viewed more favorably. Majority Op. at 14. In so concluding, the Majority blesses the rationale of the trial court, which denied Norton's motion because his two "primary claims that he was innocent and that he sought to challenge the Commonwealth's evidence at trial, were not novel to the post-plea proceedings of this case." Majority Op. at 9 (citing Trial Court Opinion, 11/17/2015, at 8).

If the Majority's opinion is interpreted to mean that sufficiency of the evidence arguments will only be viewed as "at least plausible" if the facts giving rise to the challenge post-date the entry of a plea, then the Majority has overruled *Carrasquillo*'s continued embrace of the liberal grant of presentencing withdrawal motions, as few, if any, defendants will be able to meet this standard. For the reasons discussed herein, it is my view that this standard is antithetical to the guiding principle that motions to withdraw should be liberally granted and to the rationale for liberality in this area, i.e., to protect the right to trial by jury.[1] Contrary to the Majority, I would hold that the trial court

---

[1] In contrast to the liberal policy allowing plea withdrawal prior to sentencing, a far more stringent "manifest injustice" standard applies to post-sentence motions to withdraw. The rationale behind this distinction is a desire to discourage the use of plea withdrawals as a device for sentence previewing. Whereas a presentence motion to withdraw typically occurs before the defendant has an indication of how he will be sentenced, that is not the case for a post-sentence motion which could therefore invite abuse if granted liberally. *Commonwealth v. Starr*, 301 A.2d 592, 594 (Pa. 1973).

If the Majority Opinion is read to require post-plea evidence to support a pre-sentence motion to withdraw, it functionally erases the distinction between the policy of liberality intended for pre-sentence motions to withdraw and the higher level of scrutiny intended for post-sentence motions, rendering the former as difficult to obtain as the latter.

misapplied the law of liberality that governs pre-sentence motions to withdraw, and for that reason, I believe reversal is required.

If my reading of the Majority's opinion gives credit to announcing this post-plea evidence requirement as a standard to apply in deciding motions to withdraw pleas when that was not intended, then I am equally concerned that the Majority is imbuing trial courts with unfettered discretion in granting or denying motions to withdraw. As the Majority correctly states, an abuse of discretion will not be found based, inter alia, on a mere error of judgment, but rather exists where the trial court has reached a conclusion which overrides or misapplies the law. Majority Op. at 8, 13.[2] The purpose of our grant of allowance of appeal in this case was to determine what is the substantive "law" to be followed by trial courts in deciding whether a fair and just reason has been advanced to support a motion to withdraw a guilty plea. For example, as articulated in our grant of allowance of appeal, is it a fair and just reason to withdraw if it is plausibly argued that the Commonwealth does not have sufficient evidence to convict?[3] In my view, testing

---

[2] The question of whether an abuse of discretion standard applies to our review of pre-sentence motions to withdraw pleas is not before us. I agree with the Concurrence, however, that there is a tension inherent in reviewing the trial court's decision for abuse of discretion. *See* Concurring Op. at 1-2. As discussed herein, motions to withdraw guilty pleas prior to sentencing are to be liberally granted. By contrast, "when a trial court comes to a conclusion through the exercise of its discretion, there is a heavy burden [on the appellant] to show that this discretion has been abused." *Commonwealth v. Eichinger*, 915 A.2d 1122, 1139 (Pa. 2007) (citation omitted). Such a high threshold strikes me as ill-fitted to enforcing a policy of liberality. However, Pa.R.Crim.P. 591 recognizes that trial courts have discretion in deciding such motions.

[3] An example from a well-travelled area of law is illustrative of the application of a legal standard in the context of assessing whether a trial court abused its discretion. The admission of evidence is solely within the discretion of the trial court, and a trial court's evidentiary rulings will be reversed on appeal only if the trial court abused its discretion. In making an evidentiary ruling, however, a trial court's discretion is cabined by the legal test it is required to apply. *See e.g., Commonwealth v. Woodard*, 129 A.3d 480, 494 (continued…)

the plausibility of a guilty plea withdrawal against the sufficiency of the Commonwealth's evidence is consistent with the policy of liberality re-announced in *Carrasquillo* and embedded in our criminal justice system.

The Majority's opinion is so amorphous in its statement of the law that it can be read to say that a trial court, having had the opportunity to observe the defendant, can, in its discretion, convert any reason for withdrawal into a "bare assertion of innocence" and deny the motion. If this is the "legal standard," then no decision of a trial court can ever be overruled because the "law" is whatever the trial court's view of fairness and justice is under the circumstances. Such discretion is essentially unreviewable. Unfortunately, other than blessing a trial court's exercise of discretion, the Majority does not articulate any standard against which these motions must be decided.

Although the Majority purports to recognize that a trial court's exercise of discretion is cabined by the application of a substantive legal standard, *see* Majority Op. at 15, n.7, its decision is untethered to any standard. For example, at no point does the Majority reconcile the denial of the motion to withdraw with the level of liberality required

___

(…continued)
(Pa. 2015) (ruling on admissibility of photograph of homicide victim requires trial court to examine whether photograph is inflammatory and, if not, whether it is relevant and can assist the jury in understanding the facts of the case); *see also, e.g.* Pa.R.E. 403 (providing that "the court may exclude evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence"). The trial court, of course, exercises its discretion in applying these substantive legal standards to a case, but discretion is not itself the governing legal standard. *See id.*

In reviewing a trial court's evidentiary ruling, the appellate court may disturb the order of the trial court only where there has been an error or misapplication of law or a clear or manifest abuse of discretion. *Id.* Plainly, this standard of review contemplates the existence of substantive law which the trial court is required to apply.

in deciding such motions. Further, if the Majority suggests that a "fair and just reason" is the substantive legal standard, this suggestion ignores the fact that in *Carrasquillo*, this Court began to craft the parameters for a cognizable claim of innocence as a "fair and just reason" for withdrawal. Our grant of allowance in this case was intended to further define the contours of a claim of innocence that is "at least plausible."

A bedrock principle of American criminal jurisprudence is that an accused is presumed innocent under the law unless and until the government is able to prove his guilt beyond a reasonable doubt. *See In re Winship*, 397 U.S. 358, 363-64 (1970). Thus, when a defendant chooses to enter a guilty plea rather than proceed to trial, the law seeks to ensure that he does so knowingly, intelligently and voluntarily, with the fullest understanding that he is waiving this fundamental right, among many others. *See generally Santobello v. New York*, 404 U.S. 257, 264 (1971) (Douglas, J., concurring) (describing a guilty plea as "a serious and sobering occasion inasmuch as it constitutes a waiver of the fundamental rights to a jury trial, to confront one's accusers, to present witnesses in one's defense, to remain silent, and to be convicted of proof beyond all reasonable doubt"). A guilty plea is considered a defendant's consent that judgment of conviction may be entered without a trial. *Commonwealth v. Starr*, 301 A.2d at 594. Once the court accepts a plea, the defendant's presumption of innocence is forfeited and all that remains is the imposition of a sentence. *See Commonwealth v. Jones,* 683 A.2d 1181, 1202-03 (Pa. 1996) (observing that the presumption of innocence no longer applies during the penalty phase of a criminal proceeding).

Nonetheless, even a defendant who knowingly and voluntarily swears that he is guilty may seek to withdraw his plea and proceed to trial. *See Commonwealth v.*

*Santos*, 301 A.2d 829, 830 (Pa. 1973). Consistent with our jurisprudence, Rule 591 of the Pennsylvania Rules of Criminal Procedure, relating to presentence plea withdrawals, provides: "[A]t any time before the imposition of sentence, the court may, in its discretion, permit, upon motion of the defendant, or direct, sua sponte, the withdrawal of a plea of guilty or nolo contendere and the substitution of a plea of not guilty." *Id.* Citing this Court's decisions in *Commonwealth v. Forbes*, 299 A.2d 268 (Pa. 1973), and *Commonwealth v. Randolph,* 718 A.2d 1242 (Pa. 1998), the official comment to Rule 591 notes that "after the Commonwealth has had an opportunity to respond, a request to withdraw a plea made before sentencing should be liberally allowed." Pa. R. Crim. P. 591, Comment.

In *Forbes*, we explained that "although there is no absolute right to withdraw a guilty plea, properly received by the trial court, it is clear that a request made before sentencing … should be liberally allowed." *Forbes*, 299 A.2d at 271. A liberal rule allowing withdrawal of a plea prior to sentencing helps to ensure that a defendant is not denied the fundamental right to trial by jury unless he unequivocally relinquishes it. *Id.* Accordingly, we indicated that "any fair and just reason" could serve as a basis for granting a presentence withdrawal motion "unless the prosecution has been substantially prejudiced." *Id.* (citing ABA Standards Relating to Pleas of Guilty § 2.1(b) (Approved Draft, 1968)). Based on the facts in *Forbes*, we held that a defendant's post-plea, pre-sentencing bare assertion of innocence – "I don't want to plead guilty to nothing I didn't do" – constituted such a "fair and just reason" for withdrawal. *Id.* at 272.

*Carrasquillo* modified *Forbes.* In *Carrasquillo*, we recognized that the "per se approach" to innocence claims had become untenable, but expressly retained *Forbes'*

"policy of liberality." *Carrasquillo*, 115 A.3d at 1292. The *Carrasquillo* court's requirement of plausibility of the assertion of innocence must be given definition by reference to the facts of the case because this Court did not otherwise shed light on the concept of plausibility. In *Carrasquillo*, the defendant was accused of sexually assaulting two girls. He made inculpatory statements at the time of arrest and subsequently entered open guilty pleas after being informed of the constitutional rights he would waive by so doing. *Id.* at 1285-86. At his plea colloquy, the Commonwealth proffered a range of evidence against him, including his own statements, victim identification testimony, video surveillance recordings of the defendant in the vicinity of the victims, and DNA and fingerprint evidence linking him to the rape of one of the victims. *Id.* at 1285.

At his sentencing hearing several months later, the Commonwealth read into the record a report prepared by the Sexual Offenders Assessment Board ("SOAB") characterizing the defendant as a sexually violent predator and a cruel assailant motivated by rage and anger. *Id.* at 1286. Family members of one of the victims testified to the trauma defendant had inflicted. *Id.* Following the presentation of this testimony, the defendant sought to withdraw his guilty plea. *Id.* In furtherance of his request, he made a series of outlandish remarks asserting, for example, that "the Antichrist, he came out of me," and that the CIA had victimized him by seeking to employ him as an assassin. *Id.* He insisted that he had been framed and that a polygraph test would prove his innocence. The sentencing court denied his motion to withdraw. *Id.* at 1287.

Citing *Forbes,* a divided en banc panel of the Superior Court reversed, finding defendant's claim of innocence controlling despite his "fantastical" assertions. *Carrasquillo*, 78 A.3d at 1126. The Superior Court held that "our law does not (contrary to the Commonwealth's suggestion) require some quantum of 'rational support' as a prerequisite for a plea withdrawal." *Id.*

On appeal, this Court reversed, deciding in essence that some quantum of "rational support" is a prerequisite for a pre-sentence plea withdrawal. We clarified that, broadly speaking, "the proper inquiry on consideration of such a withdrawal motion is whether the accused has made some colorable demonstration, under the circumstances, such that permitting withdrawal of the plea would promote fairness and justice." *Carrasquillo*, 115 A.3d at 1292. Specifically, when a defendant asserts his innocence as a basis for withdrawing his guilty plea, as in *Carrasquillo*, his "innocence claim must be at least plausible to demonstrate, in and of itself, a fair and just reason for presentence withdrawal of a plea." *Id.* Finally, we explained that "the policy of liberality remains extant but has its limits, consistent with the affordance of a degree of discretion to the common pleas courts." *Id.*

Applying this standard to the unique facts in *Carrasquillo*, we held that the "bizarre statements" that accompanied Carrasquillo's assertion of innocence "wholly undermined its plausibility," particularly because the Commonwealth's evidentiary proffer at the plea hearing was strong. *Id.* at 1293. We also observed that Carrasquillo had waited until his sentencing hearing to seek withdrawal. *Id.* at 1292-93. This delay, and the concomitant failure to advance a written motion to withdraw while the record was still open, weighed against granting his request. *Id.*

We decided *Hvizda* as a companion case to *Carrasquillo*. In *Hvizda*, the defendant pled guilty to first-degree murder and possession of an instrument of crime after surrendering himself to police and confessing to the stabbing of his estranged wife immediately following the incident in question. *Commonwealth v. Hvizda*, 116 A.3d 1103, 1104 (Pa. 2015). Two months later, at his sentencing hearing, he told the court: "I'm here to maintain my innocence in the charge of murder in the first degree." *Id*. His counsel explained that his client's "fair and just reason" in support of his motion to withdraw his plea was "that he maintains his innocence" as to the charges. *Id*. At a hearing on the motion, the Commonwealth presented a tape recording of the defendant's telephone conversations from prison during which he again confessed to the crime but stated that he wished to go to trial to "get some of the story out." *Id*. The trial court denied the motion, calling his "bald assertion of innocence … at best pretextual and an attempt to manipulate the system." *Id*. at 1105. The Superior Court reversed and the Commonwealth appealed. Citing our holding in *Carrasquillo*, we reiterated that Hvizda's "bare assertion of innocence … is not, in and of itself a sufficient reason to require a court to grant" a withdrawal request. *Id*. at 1107.

*Carrasquillo* and *Hvizda* informed us that a "claim of innocence," standing alone, is not sufficient to satisfy the *Forbes'* "fair and just reason" basis for withdrawal.[4] Instead, the defendant must show that his claim of innocence is "at least plausible" by

---

[4] Pursuant to Rule 591 and *Forbes*, it remains true that "**any** fair and just reason" may provide the basis for withdrawal, so long as the Commonwealth would not be substantially prejudiced. *See Forbes*, 299 A.2d at 271 (emphasis added). Withdrawing a plea does not require an assertion of innocence, per se. *Carrasquillo* merely provides that when an assertion of innocence is the accused's rationale for wanting to withdraw his plea, he must make a colorable demonstration as to the plausibility of that assertion.

making a "colorable demonstration" that granting his motion "would promote fairness and justice." *Carrasquillo*, 115 A.3d at 1292. Neither outlandish statements unrelated to the crime nor an unsupported claim about the potential outcome of polygraph testing will convert a bare assertion of innocence into an assertion of innocence that is "at least plausible." *See id.* Given their unique facts, however, neither *Carrasquillo* nor *Hvizda*, provided guidance regarding what sort of demonstration **is** necessary and sufficient to show plausibility and, as stated, this Court did not further explain the standard. However, it is clear that in both cases, the Commonwealth's evidence to convict was strong and neither defendant had articulated a legally cognizable defense. Indeed, the claims of innocence in both cases were implausible.

When a defendant seeks to withdraw a guilty (or nolo contendere) plea, he is asking the court to reinstate his trial rights and to cloak him, again, with the presumption of innocence. We have for decades recognized that motions to withdraw a plea should be liberally granted so that a citizen's right to trial by jury is promoted, a principle that we reaffirmed in *Carrasquillo*. *Id.* In my view, if a defendant presents a defense strategy which, when weighed against the strength of the Commonwealth's evidence, could plausibly lead a jury to conclude that the Commonwealth has failed to prove guilt beyond a reasonable doubt, a fair and just reason exists to permit the withdrawal of a guilty plea.[5]

---

[5] Independent of any claim of innocence, the trial court may also consider the timing of defendant's motion to withdraw. Certainly, even under *Forbes* and its progeny, where a bare assertion of innocence established a fair and just reason for withdrawal, evidence that the timing of the motion to withdraw established a defendant's attempt to manipulate the criminal justice system could nonetheless result in the denial of the motion to withdraw. Additionally, trial courts must consider whether granting the motion (continued…)

Applying this test to the facts of the case before us, in my view Norton's assertion of innocence is "at least plausible." Although Norton sought to withdraw his plea because he "cannot not live with himself taking a plea [of nolo contendere] to charges that he is innocent of," his innocence claim is not bare. To the contrary, if permitted to go to trial, Norton (through counsel) indicated that he would attempt to sow doubt as to the sufficiency of the Commonwealth's evidence against him by challenging the strength of the victim's testimony. Specifically, he highlighted the extent to which her testimony at the preliminary hearing was riddled with "I don't remember" responses to questions about the alleged incidents.[6] Norton also previewed that he would again challenge the admission of "prior bad acts" evidence, including testimony from his daughter that he abused her many years prior to the charge at issue as well as evidence that he confessed to that prior abuse.[7]

---

(…continued)
to withdraw would substantially prejudice the Commonwealth if the Commonwealth so claims.

[6] Norton was charged with five counts of indecent assault and one count of corruption of a minor. The criminal complaint alleged that he sexually abused his paramour's minor granddaughter beginning when she was three or four years old. At a preliminary hearing on February 27, 2013, the alleged victim testified that the abuse occurred between September 2008 and April 2012. Specifically, she stated that the abuse occurred more than one time and "a lot" but she could not remember whether it occurred more than two times. In light of this testimony, the magisterial district judge dismissed three counts of indecent assault, but held over the remaining charges.

[7] In his motion in limine, Norton argued that the alleged prior incidents occurred approximately eighteen years before the incidents alleged in the instant matter, making the former far too remote in time to be admissible pursuant to Pennsylvania Rule of Evidence 404(b). *See* Defendant's Brief in Support of Omnibus Pretrial Motion, 11/5/2013, at 2-3 (citing cases for the proposition that evidence of an independent crime is only admissible if it allegedly occurred "at or about the same time of the criminal act in question" and "not far apart in time" from charged incident). He further argued that the remoteness in time of the 404(b) evidence weighed most heavily against admission (continued…)

It is conceivable that the defense strategy Norton set forth during his withdrawal hearing could ultimately lead to his acquittal. The Rule 404(b) evidence was significant to the Commonwealth's case. A successful challenge to the ruling on its admissibility reduces the Commonwealth's case against Norton to the victim's testimony based on a demonstrably poor memory. Even the Commonwealth concedes that challenging the victim's ability to testify was a "readily apparent" defense and suggests that it would be an even stronger one if Norton succeeded in excluding the 404(b) testimony.[8] *See* Commonwealth's Brief at 11. The fact that Norton was aware of this information prior to

---

(…continued)
when, as here, there were significant differences between the prior act and the charged act. *Id.* at 2-4 (setting forth the various distinctions between the two alleged incidents and urging that the absence of "striking similarities between the cases" makes the 404(b) testimony inadmissible).

In apparent agreement with my proposed approach, the Concurrence engages in an assessment of the strength of the Commonwealth's evidence but joins the Majority nonetheless, in part because it views the Commonwealth's evidence against Norton as strong (even, I gather, when weighed against Norton's proffered defense strategy). *See* Concurring Op. at 1-2. In this regard, the Concurrence suggests that the evidence that Norton confessed to abusing his own daughter many years prior to the alleged abuse in the instant matter is particularly weighty. *See id.* at 2. As noted, Norton's proffered defense strategy involves a continued challenge to the admission of prior bad act evidence, which includes his confession. In light of the foregoing discussion about the law governing admissibility under Rule 404(b), as well as the policy of liberality governing motions to withdraw, I do not agree with the Concurrence that the Commonwealth's evidence is strong when weighed against Norton's proposed defense strategy. It also bears noting that the Commonwealth argued in its brief opposing Norton's motion in limine that it would seek to introduce the confession "depending on the nature of the defense and whether Norton testifies." Commonwealth's Opposition Brief at 3. Furthermore, the trial court reasoned, anomalously, that because the Commonwealth had no evidence other than the uncorroborated testimony of the victim, it would allow the introduction of prior bad acts. Order, 12/4/2013, at 6.

[8] Norton signaled that his defense strategy at trial would also involve contesting a statement in the affidavit of probable cause, attributed to the victim, that Norton's pubic hair was black. *See* Norton's Brief at 23. Notably, with or without this particular point, Norton's proffered defense strategy is plausible.

his plea should be of no consequence if the goal is to protect a defendant's right to trial by jury advanced by liberal grants of motions to withdraw.

The plausibility of Norton's claim of innocence stands in stark contrast to the implausible claims made by the defendants in *Carrasquillo* and *Hvizda*. Neither Carrasquillo nor Hvizda proffered a defense strategy when making their claims of innocence. In addition, the Commonwealth's evidence against each of these defendants was multi-faceted and substantial. *See Carrasquillo*, 115 A.3d at 1292-97; *Hvizda*, 116 A.3d at 1104-07. Finally, Norton did not wait until his sentencing hearing to seek withdrawal of his plea. His motion to withdraw was filed six weeks prior to his scheduled sentencing hearing and only four months after entering his plea.[9] Moreover, he filed a proper motion to withdraw in which he asserted his innocence and, on the record, made a colorable demonstration that his claim was plausible. In contrast to those made in *Carrasquillo* and *Hvizda*, neither the content of Norton's motion nor its timing reflects any effort to delay or manipulate the system.[10] No bright line rules should

---

[9] In addition, on April 5, 2015, four weeks prior to the scheduled sentencing hearing, Norton refused to participate in an interview by the SOAB, again maintaining his innocence. Hearing, 6/25/2015, at 7. The Majority observes that the trial court relied upon Norton's acknowledgement to the SOAB that Pennsylvania law required him to register as a sex offender. Majority Op. at 7 (discussing Trial Court Opinion, 11/17/2015, at 3). Neither the Majority nor the trial court, however, has explained how this point in any way supports the denial of Norton's motion to withdraw his plea, since it constituted nothing more than a recognition of current Pennsylvania law, and the record here clearly reflects that the extent of Norton's participation in the SOAB proceedings was to refuse to participate in the interview – with no acknowledgement of any guilt for the remaining criminal charges against him. Hearing, 6/25/2015, at 4, 7. The Commonwealth has not suggested to the contrary.

[10] As to a different timing issue, the Majority blesses the trial court's reference to the fact that Norton entered into the plea shortly before jury selection. Majority Op. at 14. Given that an offer of a plea is not within the control of the defendant and this record is (continued…)

be drawn regarding the point at which a motion to withdraw will be considered manipulative, especially because Rule 591 plainly gives the trial court discretion to grant these motions at any point before the imposition of a sentence.

In sum, in light of our announced continued adherence to the policy of liberally granting motions to withdraw guilty/nolo contendere pleas, I would conclude that Norton established a fair and just reason for allowing the withdrawal of his plea. Norton's claim of innocence was supported by a defense strategy which, when weighed against the Commonwealth's evidence, could plausibly result in Norton's acquittal at trial. As such, I would reverse the decision of the trial court.

For the foregoing reasons, I respectfully dissent.

Justice Wecht joins this dissenting opinion.

---

(…continued)
devoid of any evidence as to when the plea offer was made, any reliance on this factor should be totally discounted.