J-S52045-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DAWIONE LAMAR ROBERTS | : | |
| | : | |
| Appellant | : | No. 165 EDA 2019 |

Appeal from the Judgment of Sentence Entered April 15, 2016
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0003346-2015

BEFORE: OTT, J., KUNSELMAN, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.: **FILED DECEMBER 31, 2019**

Dawione Lamar Roberts ("Roberts") appeals from the judgment of sentence entered on April 15, 2016, following his convictions for attempted murder and aggravated assault.[1] We affirm.

The lower court summarized the facts as follows:

> [T]he victim, Haniyyah Dwight, identified Appellant Roberts as the individual who attempted to kill her on January 5, 2015. Other witnesses took the stand and testified that immediately after the shooting, the victim, Haniyyah Dwight, told multiple people with whom she came into contact, including: her neighbor who drove her to the hospital, her mother, the emergency room physician, and a responding police officer that "[Roberts] shot me."
>
> By way of background, Ms. Dwight testified Appellant Roberts along with several other individuals would loiter outside her home in the City of Chester and engage in hand

---

[1] 18 Pa.C.S.A. § 2502 and 18 Pa.C.S.A. § 2702(a)(1), respectively.

to hand drug sales. The victim made numerous <u>anonymous</u> reports to the Chester City Police Department regarding Appellant Roberts and the activity outside her home. On January 4, 2015, the victim made a complaint regarding Appellant and the group that loitered outside her home to the Chester Housing Authority and a Housing Authority officer visited her home later that day while Appellant Roberts and his cohorts remained outside the home. The victim testified she would routinely ask the Housing Authority police not to approach her home as she was concerned about retribution by the group loitering outside. This personal safety request was not honored in January of 2015.

…

On January 5, 2015, at approximately 10:30 p.m. while entering her home via the front door, the victim testified Appellant Roberts approach[ed] her and announced: "Call the cops now Haniyyah." He then fired several gun shots at the victim striking her three times.

PCRA Court Opinion, 6/11/19, at 10-12 (emphasis in original).

A jury trial commenced in the Court of Common Pleas of Delaware County, Pennsylvania on February 17, 2016 and concluded on February 18, 2016. The jury found Roberts guilty of attempted murder and aggravated assault. At sentencing, the court imposed a prison sentence of 20 to 40 years. The court later denied Roberts post-sentence motion. After Roberts had his appellate rights reinstated *nunc pro tunc* in a timely Post Conviction Relief Act petition, he filed this timely appeal. He raises the following issues:

I. Did the prosecutor['s] improper comments during closing argument violate Appellant's constitutional rights under the Sixth and the Fourteenth Amendments and Article 1, sec. 9 of the Pennsylvania Constitution?...

II. Did the trial court err, violating Appellant's Sixth and Fourteenth Amendment rights when it permitted Ms.

Dwight to testify about her house being robbed *after* the shooting and seeing someone (other than the defendant) on Facebook posting pictures with her TV in the background?

III. Did the trial court abuse [its] discretion in sentencing the Appellant to 20 to 40 years' incarceration[?]

IV. Did the [t]rial [c]ourt err, violating Appellant's rights under the Sixth and Fourteenth Amendments of the U.S. Constitution and Article 1, sec. 9 of the Pennsylvania Constitution, when it denied the post-sentence motion and found that the verdict is not against the weight of the evidence?

Roberts' Br. at 3-4 (suggested answers omitted).

## I. <u>Closing Argument Issues</u>

In his first issue, Roberts contends that the prosecutor made improper comments during his closing argument in violation of Roberts' state and federal constitutional rights. Specifically, Roberts argues that the prosecutor made: (1) improper personal comments about defense counsel; (2) improper arguments not based upon evidence of record; (3) improper arguments based on the prosecutor's own personal opinion; and (4) improper arguments that the victim's post-shooting statements were dying declarations. Roberts' Br. at 3.

The Commonwealth argues that although Roberts made objections to the prosecutor's closing argument, he failed to preserve these issues for appellate review since he did not request a mistrial. Commonwealth's Br. at 17. "Even where a defendant objects to specific conduct, the failure to request a remedy such as a mistrial or curative instruction is sufficient to constitute waiver." ***Commonwealth v. Sandusky***, 77 A.3d 663, 670 (Pa.Super. 2013).

While the Commonwealth is correct that Roberts' counsel did not request a mistrial, he did (with the exception of the fourth claim, as discussed below), request a curative instruction on the first three claims. Therefore, we decline to find waiver on Roberts' first three claims of prosecutorial misconduct.

Our standard of review of a claim of prosecutorial misconduct is limited to whether the trial court abused its discretion. **Commonwealth v. Rivera**, 939 A.2d 355, 357 (Pa.Super. 2007). "[P]rosecutorial misconduct is evaluated under the harmless error standard." **Commonwealth v. Cousar**, 928 A.2d 1025, 1042 (Pa. 2007).

A prosecutor's statements in closing argument do not merit a new trial unless they had the "unavoidable effect" of "prejudic[ing] the jury, forming in their minds fixed bias and hostility toward the defendant so they could not weigh the evidence objectively and render a true verdict." **Commonwealth v. Jaynes**, 135 A.3d 606, 615 (Pa.Super. 2016). The prosecution may employ oratorical flair in arguing its version of the case to the jury and may advance arguments and inferences so long as they are supported by the evidence. **Id.** Moreover, the prosecutor may fairly respond to points defense counsel made in closing. **Id.**

Roberts first contends that the prosecutor made improper personal comments about defense counsel in his closing argument. Roberts argues that the prosecutor was "making fun" of defense counsel when he said to the jury, "And you watched him fumble with those pictures, apparently that he took, what, the day of jury selection where he went down and he measured with

some measuring tape. I think he actually has it here with him." Roberts' Br. at 10, citing N.T., 2/18/16, at 253. Defense counsel objected, and the court admonished the prosecutor at sidebar:

[Prosecutor]: What did I do?

Court: You personalized with [defense counsel]. You went into [defense counsel's] personal effects. You're representing certain things that have no basis in the trial's evidence. It is done and it is done now.

N.T., 2/18/16, at 254.

Roberts argues that despite the court's warning, the prosecutor continued to make improper remarks about counsel, namely stating that defense counsel did not want to "grasp reality," was "playing games," and was "speaking in hypotheticals." Roberts' Br. at 10-11, citing N.T., 2/18/16, at 263, 265. According to Roberts, these statements were personal attacks on defense counsel and were designed to cause bias and prejudice against Roberts. Roberts' Br. at 11.

We disagree that these further comments amounted to prosecutorial misconduct. The trial court explained in its Pa.R.A.P. 1925(a) opinion that other than the first "barb," the prosecution's additional comments were a proper response to defense counsel's arguments in closing that the victim's testimony had changed over time. PCRA Court Opinion, 6/11/19, at 17-19.

We agree with the sound reasoning of the lower court. The prosecutor was appropriately responding, albeit with permissible oratorical flair, to defense counsel's closing argument regarding the credibility of the victim. **See**

*Commonwealth v. Miller*, 172 A.3d 632, 644 (Pa.Super. 2017); *Jaynes*, 135 A.3d at 615.

Furthermore, at the urging of Roberts' counsel, the trial court gave a curative instruction that counsel's closing arguments are not evidence. N.T., 2/18/16, at 271-272. We presume that the jury followed this instruction. *See Commonwealth v. Jemison*, 98 A.3d 1254, 1263 (Pa. 2014). This was sufficient to cure any alleged prejudicial effect from the prosecutor's statements. None of the comments had the "unavoidable effect" of "prejudic[ing] the jury."

Roberts next contends that the prosecutor made arguments not based on evidence of record in his closing argument. Specifically, Roberts asserts that it was improper for the prosecutor to refer to Roberts as a drug dealer and state that the victim interfered with Roberts' drug business when she reported him to the police. Roberts' Br. at 14.

We disagree. At trial, the victim testified that a group of young males, including Roberts, would gather outside of her house every day and sell drugs. N.T. 2/17/16, at 25-26. She stated that those individuals smoked marijuana and regularly left trash and drug paraphernalia outside of her house. *Id.* at 27-29. The victim testified that Roberts and his associates would be disrespectful and physically threaten her when she asked them to clean up their trash. *Id.* at 32-37. The victim further testified that she regularly called the police and the housing authority to complain about the drug activity and the trash that Roberts and his group left behind. *Id.* at 38-39.

In his closing argument, the prosecutor stated:

> If you don't think calling the cops, interfering in the drug trade, getting their stashes taken, chasing them from their corner, diminishing business, and otherwise drawing law enforcement's attention to everything that's going out there is not motive, I submit to you, ladies and gentlemen, there are people getting shot down in Chester for a lot less.
>
> …
>
> But why would she do it? Even this man. I can't tell you. He doesn't want to say well, because she called the cops on me every day, interfering with the drug trade, got the police attention drawn to me. Certainly a valid motive.

N.T. 2/18/16, at 260-261; 266-267. Defense counsel made an objection stating, "And the drug trade comments, again and again, there's no evidence here to this jury that [Roberts] was selling drugs, other than what [the victim] said." *Id.* at 270.

Roberts contends that the prosecutor's comments were improper because they went beyond the parties' pre-trial stipulation limiting evidence of Roberts' alleged drug dealing to the victim's testimony about her observations and reports of his alleged drug dealing. Roberts' Br. at 14. This argument is a *non sequitur*. The pretrial stipulation related to *evidence* of his alleged drug dealing; here, the prosecutor made a *closing argument* that Roberts had a motive to shoot the victim, due to her reporting his drug dealing. That argument was firmly based on the record evidence, and not improper. Roberts' complaint that the only evidence of such prior bad acts was

the victim's testimony does not somehow deprive the prosecutor's argument of a foundation in the record.

Moreover, the court gave the jury a limiting instruction that it was to consider the evidence of Roberts' prior bad acts solely as evidence of "intent and/or motive," and "to show the chain and sequence of events of these purported facts which led to the filing of charges against Mr. Roberts." N.T., 2/18/16, at 294. The court added that the jury was not to consider it as "evidence of Mr. Roberts having bad character and/or that Mr. Roberts has criminal propensities from which you might be inclined to infer guilt." *Id.* at 295. Thus, the record belies Roberts' claim that "[t]he jury was not told that … [Roberts] was not being tried for being a drug dealer and that they should not consider that it determining his guilt in this case." Roberts' Br. at 15-16. Accordingly, we reject Roberts' assertion and discern no abuse of discretion by the trial court.

Next, Roberts argues that the prosecutor made improper arguments based his own personal opinion. The victim testified at trial that after Roberts shot her and fled, she picked up Roberts' gun that he had dropped and put it in her car "for evidence." N.T., 2/17/16, at 66-67. However, police later confirmed through ballistic evidence that the gun was not the one used in the shooting; the gun used in the shooting was never recovered. N.T., 2/18/16, at 31-33. In his closing argument, the prosecutor stated:

> I don't give one shakes of a rat's tail whether you go back
> in that deliberation room and you all get together and you
> deliberate and you finally come to the conclusion this is [the

victim's] gun. I don't care. I really don't. Because the reality of the situation is hell, I wouldn't blame her. What they were doing to her on a daily basis, she was a young woman living alone, scared, had to come down - if she had to squeeze the trigger and popped him, with all - everything else at the scene, no hesitation. She's justified. Do you think she's trying to get out from, what, a misdemeanor violation of a Firearm's Act? So go back. I don't care if you conclude it's her gun. Don't care. But what I told you is I can't say with certainty it is or it isn't. But what I can say she didn't fire it. She picked it up. It's her blood on the gun.

N.T., 2/18/16, at 264.

Roberts contends that it was improper for the prosecutor to express his personal opinion that the victim "was justified in lying to the jury about whose gun it was that she picked up and put on the seat of her car," thereby urging the jury to disregard contradictory evidence. Roberts' Br. at 16. We disagree.

As the lower court correctly noted, the prosecutor was merely responding to defense counsel's closing argument that the gun the victim found was not the gun used in the shooting and was not associated with Roberts. N.T., 2/18/16, at 226. "It is well settled that the prosecutor may fairly respond to points made in the defense closing." *Id.* It was therefore proper for the prosecutor to address this evidence. We also note, yet again, that the trial court instructed the jury that closing arguments were not evidence and we presume that the jury followed this instruction. *Jemison*, 98 A.3d at 1263.

Roberts next argues that the prosecutor made improper arguments that certain statements the victim made were dying declarations. The victim testified that she repeatedly told people shortly after the shooting that Roberts

had shot her, and explained that she did so because she wanted them to know in case she died from her wounds:

> [Prosecutor]: Why did you want to keep telling everyone that you encountered [that Roberts] shot you?
>
> [The Victim]: "To -- just so if I die -- because I asked [the physicians at the hospital] if I was going to die and they told me they couldn't tell me that. They didn't know. They would have to get in there to see. And so I asked them if I die, could you please, please just let somebody know that [Roberts] shot me."

N.T., 2/17/16, at 71. There was no objection to this testimony.

In his closing argument, the prosecutor stated that the victim's post-shooting statements identifying Roberts as her shooter constituted dying declarations, and were admissible as an exception to the hearsay rule. According to Roberts, this argument impermissibly bolstered the credibility of the victim's trial testimony. Roberts' Br. at 19.

It is clear that the dying declaration exception to the hearsay rule did not apply to the victim's post-shooting statements, as the victim was available to testify, and, in fact, did testify at trial. *See* Pa.R.E. 802(b)(2). Therefore, the prosecutor incorrectly told the jury in his closing argument that the victim's post-shooting statements were dying declarations.

However, although defense counsel objected, he did not request a mistrial or a curative instruction on this particular issue. Indeed, defense counsel did not seek *any* relief on this issue, and as a result, the trial court did not make a ruling. Therefore, this claim is waived. *Sandusky*, 77 A.3d at 670.

Even if this claim were not waived, the prosecutor's incorrect statement would not be grounds for a new trial. He was attempting to liken the victim's statements to dying declarations in order to argue that the jury should find them credible because the victim believed she might not "make it." *See* N.T., 2/18/16, at 258. This had a basis in the victim's testimony, and his mischaracterization of that testimony as a "dying declaration" was not so inflammatory as to unavoidably prejudice the jury. Roberts is therefore due no relief on his claims of prosecutorial misconduct.

## II.   **Admissibility of Evidence**

In his second issue, Roberts contends that the trial court erred in permitting the victim to testify about her house being "robbed" after the shooting. Roberts' Br. at 20. Roberts asserts that this testimony was irrelevant and "irreparably prejudicial." *Id.* at 21. We disagree.

At trial, the victim testified, over objection, that her house was burglarized after the shooting, and that certain items, including her TV, were missing. N.T., 2/17/16, at 97. She then said that she was Facebook friends with "Neek," who was the girlfriend of Meechy Roberts, one of the males who regularly gathered outside of her house with Roberts. *Id.* at 99-100. The victim stated that she saw a picture on Facebook of Neek and Meechy Roberts' young son with her stolen TV in the background. *Id.* at 100. The victim responded with a Facebook post accusing Roberts and his associates of the burglary and theft:

> Been living in my crib for 14 years with no incident. A week ago, they robbed my crib, turned around and shoots me, then these same cowards, all men, little Damon Thurwar [phonetic] and [Roberts] and his team of cowards goes back and ransacks my crib and steals some TVs, then gets mad because I call the cops and they call me a cop. No, I'm a woman who lives alone. Cowards. And then people try and justify it, weak followers.

*Id.* at 104-105.

The trial court permitted this testimony because it was "relevant to address the victim's post-shooting recovery, her state of mind, and dealings with the individuals she believed plagued her neighborhood and caused harm." PCRA Court Opinion, 6/11/19, at 26.

"The admission of evidence is a matter vested in the sound discretion of the trial court, whose decision thereon can only be reversed by this Court upon a showing of an abuse of discretion." *Commonwealth v. Jones*, 683 A.2d 1181, 1193 (Pa. 1996). "The threshold inquiry with the admission of evidence is whether the evidence is relevant." *Commonwealth v. Stokes*, 78 A.3d 644, 654 (Pa.Super. 2013). "Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or supports a reasonable inference or presumption regarding the existence of a material fact." *Id.* (citation omitted). In assessing whether to admit evidence that is logically relevant, the court must also "weigh the relevance and probative value of such evidence against the prejudicial impact of that evidence." *Jones*, 683 A.2d at 1193.

- 12 -

We agree with the Commonwealth that the court properly admitted the evidence of the robbery of the victim's home, the theft of her TV, and the Facebook posting. All tended to show that the victim was not unreasonable in her belief that Roberts and his friends were targeting her. The evidence also supported the victim's credibility regarding her ability to identify Roberts from Meechy Roberts and the other males who regularly gathered outside of her house. Furthermore, any alleged prejudicial effect from the admission of this evidence was *de minimis* and would not have affected the outcome of the trial. **See Commonwealth v. Vucich**, 194 A.3d 1103, 1110 (Pa.Super. 2018). Accordingly, we discern no abuse of discretion.

### III.  **Roberts' Sentencing Issue**

In his third issue, Roberts contends that the trial court abused its discretion in sentencing him to 20 to 40 years of incarceration. This issue challenges the discretionary aspects of Roberts' sentence. "The right to appellate review of the discretionary aspects of a sentence is not absolute, and must be considered a petition for permission to appeal." **Commonwealth v. Conte**, 198 A.3d 1169, 1173 (Pa.Super. 2018), *appeal denied*, 206 A.3d 1029 (Pa. 2019). Before reviewing the merits of Roberts' claim, we must determine whether: "(1) the appeal is timely; (2) the appellant has preserved his issue; (3) his brief includes a concise statement of the reasons relied upon for allowance of an appeal with respect to the discretionary aspects of his sentence; and (4) the concise statement raises a substantial question whether

the sentence is inappropriate under the Sentencing Code." ***Commonwealth v. Green***, 204 A.3d 469, 488 (Pa.Super. 2019).

Here, Roberts has complied with the first three requirements: his appeal is timely, he preserved the issue in a post-sentence motion, and his brief includes a statement of the reasons for allowance of appeal. We now turn to whether Roberts has raised a substantial question.

A substantial question exists when the appellant makes a colorable argument that the sentencing judge's actions were either inconsistent with a specific provision of the Sentencing Code or contrary to the fundamental norms underlying the sentencing process. ***Commonwealth v. Moury***, 992 A.2d 162, 170 (Pa.Super. 2010). Roberts' Pa.R.A.P. 2119(f) statement asserts that the sentencing court impermissibly double-counted factors in imposing his sentence. Roberts' Br. at 7. Such a claim raises a substantial question. ***See Commonwealth v. Robinson***, 931 A.2d 15, 27 (Pa.Super. 2007); ***Commonwealth v. Goggins***, 748 A.2d 721, 731 (Pa.Super. 2000) (*en banc*). We thus proceed to the merits of the claim.

Roberts contends that the court improperly double-counted factors in imposing his sentence, including his juvenile adjudications and placements, his prior adult criminal record, and his lack of amenability to treatment. Roberts' Br. at 26. According to Roberts, if the court had not double-counted these factors, it would have not been able to sentence him in the aggravated range. ***Id.*** at 26-27.

"Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion." *Commonwealth v. Edwards*, 194 A.3d 625, 637 (Pa.Super. 2018), *appeal denied*, 202 A.3d 41 (Pa. 2019) (citation omitted). An abuse of discretion occurs where "the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision." *Id.* In imposing a sentence, the sentencing court must consider "the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721(b).

Courts may not double-count factors already included in the Sentencing Guidelines when fashioning a sentence. *Goggins*, 748 A.2d at 732. Nevertheless, the court must consider both "the particular circumstances of the offense and the character of the defendant." *Moury*, 992 A.2d at 171. The court should refer to the defendant's prior criminal record, his age, personal characteristics and his potential for rehabilitation. *Id.* "Where the sentencing court had the benefit of a presentence investigation report ("PSI"), we can assume the sentencing court was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." *Id.*

We do not agree that the trial court improperly double-counted certain factors at sentencing. The court cited Roberts' juvenile and criminal record in concluding that Roberts was not amenable to rehabilitation:

> From the presentence investigation I learned Mr. Roberts' involvement with the juvenile court started at age 12....What also struck me in reviewing the delinquent history was not as much the nature of the adjudications, but their frequency in continuation in combination with placements at Vision Quest, Glenn Mills, replacement at Glenn Mills and finally placement at Summit Academy. Having presided in juvenile court for five years, I know these are not decisions any [j]udge undertakes lightly and in my mind demonstrates that despite the therapeutic milieu of the juvenile delinquency courts for whatever the reasons Mr. Roberts just is not amenable for that treatment. That's born out ultimately when at age 17 the firearms matter is transferred from the juvenile [c]ourt to the criminal [c]ourts, which in part required a finding he was not amenable to the therapeutic milieu of juvenile [c]ourt treatments along with certain other considerations.
>
> …
>
> I've looked at the sentencing guidelines. I'm mindful of that which the Pennsylvania Sentencing Code requires. I don't share [defense counsel's] belief about rehabilitation, not on the record I recited. I'm not saying it's impossible. I believe it's improbable. Mr. Roberts had that opportunity starting at age 12. He had it through a variety of both community based and residential based programs. Yet for whatever the reasons he didn't invest, he wasn't motivated, he's in criminal court by the age of 17. I struggle on this record and that which I have reviewed to find that which suggests Mr. Roberts has any desire of rehabilitation yet alone the motivation necessary to complete what will be a challenging task....I think it's a fair characterization of the evidentiary presentation [that] because somebody contacted the police and reported criminality to authorities they were targeted, they were shot. The community of Chester struggles and in large part it struggles because the majority of its honest,

decent, hardworking, law abiding citizens are afraid. And it's
cases like this that make them afraid.

*Id.* at 33-36.

The fact that the Sentencing Guidelines also use the defendant's prior juvenile and criminal record to suggest sentencing ranges does not preclude the defendant's record in determining whether the defendant is a likely candidate for rehabilitation. The record is devoid of any alleged double-counting of sentencing factors by the trial court. We discern no abuse of discretion.

## IV. <u>Weight of the Evidence</u>

In his last issue, Roberts challenges the weight of the evidence. Although Roberts lists this issue in his Statement of Questions Involved, he fails to develop the issue any further in his brief. "[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived." ***Commonwealth v. Johnson***, 985 A.2d 915, 924 (Pa. 2009). Accordingly, Roberts has waived his weight claim.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/31/19

- 17 -